Minerva **VELEZ CORTES**, Plaintiff,

v.

Ismael **NIEVES VALLE**,
et al., Defendants

No. CIV. 02–1448(JP).

United States District Court,
D. Puerto Rico.

March 25, 2003.

Celina Romany Siaca, Juan M. Frontera Suau, San Juan, PR, for Plaintiff.

Arturo Luciano Delgado, I.L.A. Office Building, San Juan, PR, José A. Hernández Mayoral, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Plaintiff's unop-

posed[1] "Motion for Summary Partial Judgment" (docket No. 17). This is an action for damages, declaratory, and injunctive relief filed by Plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–16, and 42 U.S.C. 1981a. Plaintiff also invokes the Court's supplemental jurisdiction over the following Puerto Rico law claims: Law 100, 29 P.R. Laws Ann. § 146; Law 17, 29 P.R. Laws Ann. §§ 155–1551; Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. §§ 5141 and 5142; 32 P.R. Laws Ann. §§ 3118–3132; and Law 80, 29 P.R. Laws Ann. § 185a. Plaintiff claims that there is no genuine controversy as to the material facts in this case and that she is entitled to judgment as a matter of law.

Defendants have failed to file the required opposition and statement of contested facts to Plaintiff's motion for summary judgment. When a motion for summary judgment is unopposed by the nonmoving party, summary judgment shall be entered against the nonmoving party but only if appropriate. Fed. R.Civ.P. 56(e); *Rivera Domenech v. Pérez*, 141 F.Supp.2d 235, 238 (D.Puerto Rico 2001). The Court must consider if there is an absence of genuine issues of material fact. Fed.R.Civ.P. 56(c); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 929 (1st Cir.1983). Furthermore, Local Rule 311(12) requires that a motion for summary judgment "be served and filed annexed to the motion a separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried . . . ." United States District Court for the District of Puerto Rico, Local Rules of the Court, Rule 311(12) (Michie 1996). These facts are deemed admitted unless the nonmoving party files

an opposition that includes "a separate, short, and concise statement of the material facts as to which it is contended that there is a genuine issue to be tried . . . ." *Id.* The First Circuit Court of Appeals has held that the failure to present a statement of disputed facts justifies the court's deeming the movant's statement of uncontested facts admitted and ruling accordingly. *Corrada Betances v. Sea–Land Serv., Inc.*, 248 F.3d 40, 44 (1st Cir.2001); *see also Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996); *Rivas v. Federación de Asociaciones Pecuarias*, 929 F.2d 814, 816 (1st Cir.1991); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 19 (1st Cir.1989). Therefore, Plaintiff's statements of uncontested facts filed annexed to her cross-motion for partial summary judgment shall be deemed admitted, and the Court will consider only if Plaintiff is entitled to summary judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff Minerva Vélez started to work for Co–Defendant Ismael Nieves (hereinafter "Nieves") on October 20, 1987, and worked continuously until her termination on or about March 2000.

2. Plaintiff generally worked in three of Nieves' companies, Awning Windows, Inc., Caribbean Aluminum Security Products (hereinafter "CASP") and Aluminum de Puerto Rico (hereinafter "APR"). In APR Plaintiff worked as a plant manager from 1993 to 1997. On December 1, 1997, she resigned as APR Plant Manager and took the position of Comptroller for

---

**1.** Defendants failed to oppose Plaintiff's motion on or before the date established by this

Court (docket No. 41). For this reason, Plaintiff's motion is deemed as unopposed.

CASP. The change did not affect the salary and benefits she received as a Plant Manager. However, it did place her physically closer to Nieves. Her office in CASP was located exactly across the hall from Nieves' office.

3. During Plaintiff's twelve-year tenure working for Nieves she was never reprimanded and never received a negative evaluation for her performance.

4. In 1993 she began a consensual relationship with Nieves. The relationship never affected her performance.

5. She decided to end the relationship on February 18, 1998.

6. Immediately after the relationship concluded, Nieves began to walk into Plaintiff's office every other day, something he rarely did before, with questions concerning matters not related to her work. He asked questions about her personal life and pressured her into renewing their relationship. On some occasions he told her that "this was his company and he could do whatever he wanted, if she did not like it she could leave at any time." It was not uncommon for him to remind her that he owned the place and she was just another one of this employees. This made her feel extremely humiliated, because it seemed to her, that he was taking advantage of the fact that she was his subordinate.

7. Nieves began to tell her that he was going to terminate her employment or demote her. After asking her to renew their relationship and hearing her rejection, he would remind her that he was the owner and asked her "who do you think you are?"

8. One day Nieves called her in the office and asked her if she wanted to suck on his sucker. Moments after she rejected the sexual innuendo he walked into her office and threw a sucker ("lollipop") at her desk and left laughing.

9. Other times Nieves came into the office inquiring about job related matters. However, his attitude, demeanor, tone of voice and the subject matter of the questions made it clear to Vélez that his concerns were not job related, but rather personal in nature.

10. When Nieves was not walking into Plaintiff's office, he was calling her in the phone with the same line of questioning. This constant interruption made it next to impossible for Plaintiff to perform her work properly.

11. Even though Nieves was the president and owner of the company, Plaintiff's direct manager was Mr. Martínez; accordingly, he was the one in charge of supervising Mrs. Vélez.

12. Nieves' unprofessional behavior was always rejected by Plaintiff, who constantly told him that she was never going to renew their romantic relationship.

13. Plaintiff often complained to her direct supervisor, but in view of the fact that the harasser was the president and owner of the company nothing was officially done to stop him. The moment a position of Sales Representative for CASP opened up she felt forced to request it. She reasoned that although said position was a demotion, since the Sales Department was on a different floor, by keeping more distance between her and Nieves the harassment would dissipate. Furthermore, since Nieves had already threatened to terminate her employment or demote her, she thought that by doing this she might be able to keep her job.

14. Nieves began to constantly call her at the office asking her if she was having an affair with her supervisor, Mr. Martínez.

15. This situation became intolerable when she found Nieves at the front door of her house one night when she was returning home with her three children. Nieves, in front of her children began to insult her and scream at her. This situation made her so nervous that she left for a few hours only to find him there when she returned. Nieves continued his violent behavior but this time he threatened her with violence. He said that he would hurt her if she did not talk to him. She immediately left again but this time he followed her with his car and tried to force her onto the side of the road. When they stopped at a light he told her to park but she never stopped to talk to him and eventually she managed to lose him.

16. Plaintiff, in a desperate attempt to put an end to Nieves' harassment, formally complained to her direct supervisor and scheduled a meeting with Nieves. However, very little was actually accomplished by this meeting.

17. This pattern of harassment continued uninterrupted until March 2000 when Nieves ordered Martínez to terminate Plaintiff's employment. When she asked him what the reason was he told her that Nieves did not give him any reasons. After Mr. Martínez told Plaintiff about Nieves decision to fire her, she personally called Nieves to demand a termination letter and an explanation for his actions. Nieves, without any explanations, forced Plaintiff to leave the plant at once. After twelve years of dedication and hard work she was not even given a reason for her termination.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In discharging this burden, the non-movant may not rest upon mere allegations or denials of the pleadings. *See* Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[The non-movant] must do more than simply show that there is some meta-

physical doubt as to the material facts."). On issues where the non-movant bears the ultimate burden of proof, it must present definite, competent evidence to rebut the evidence put forth by the moving party. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Summary judgment may be appropriate "[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994) (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

## IV. DISCUSSION

Title VII of the Civil Rights Act of 1964, prohibits discrimination on the basis of sex, with respect to the terms, conditions, or privileges of employment. *See* 42 U.S.C. § 2000e–2(a)(1). To this effect, sexual harassment is a form of discrimination prohibited by Title VII. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). More specifically, the Equal Employment Opportunity Commission ("EEOC") guidelines on discrimination because of sex, in pertinent portion, provides:

> Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidat-

ing, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a).

A sexual harassment claim may be brought under either of two distinct theories: *quid pro quo* harassment and hostile work environment. *See Meritor Sav. Bank*, 477 U.S. at 65, 106 S.Ct. at 2405; *Equal Employment Opportunity Comm'n v. Horizons Hotel Corp.*, 831 F.Supp. 10, 13 (D.Puerto Rico 1993). Both theories are discussed below.

### A. *Quid Pro Quo* Sexual Harassment

*Quid pro quo* sexual harassment exists "where a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply." *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir.1988). In order to succeed in a quid pro quo harassment claim a plaintiff must establish the existence of five factors: (i) that the plaintiff-employee is a member of a protected group; (ii) that the sexual advances were unwelcome; (iii) that the harassment was sexually motivated; (iv) that the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (v) that respondeat superior liability has been established. *See Horizons Hotel Corp.*, 831 F.Supp. at 13; *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 783 (1st Cir.1990); *Lipsett*, 864 F.2d at 897.

Clearly, the first factor has been established in this case as Plaintiff unquestionably is a female. The uncontested facts establish the second factor—that the sexual advances were unwelcome. According to the uncontested facts, Plaintiff found Co–Defendant Nieves' advances to be unwelcome since the time of their breakup. *See* Section II(12), *supra*. She even com-

plained to her supervisor Francisco Martínez, to no avail. *See* Section II(13 and 16), *supra.*

Plaintiff has further established the third factor—that the harassment be based on sex. The uncontested facts demonstrate that Co–Defendant Nieves repeatedly requested Plaintiff to renew their previous relationship. *See* Section II(6 and 7), *supra.* In addition, the uncontested facts reflect that Co–Defendant Nieves made statements with overt sexual overtones and inquired into Plaintiff's personal life. *See* Section II(8 and 14), *supra.*

The fourth factor—that Plaintiff's rejection of harassment resulted in a tangible job detriment—has also been established by Plaintiff. The uncontested facts demonstrate that Plaintiff was never reprimanded nor received a negative evaluation for her performance. *See* Section II(3), *supra.* Furthermore, the uncontested facts demonstrate that Co–Defendant Nieves ordered Francisco Martínez to terminate Plaintiff and did not give any explanation for the basis of the termination. *See* Section II(17), *supra.*

The fifth and final factor—that Co–Defendant Awning Windows is legally responsible for Co–Defendant Nieves' acts— is also met in this case. An employer is strictly liable for the *quid pro quo* harassment of an employee by his/her supervisor. *See Horizons Hotel Corp.,* 831 F.Supp. at 14; *Chamberlin,* 915 F.2d at 785. This is especially so when the harasser is the employer himself. The fact that Co–Defendant Nieves was not Plaintiff's direct supervisor does not limit the culpability of *quid pro quo* harassment. Finally, it is evident that no remedial measures were taken by Co–Defendant Awning Windows, Inc. to halt Co–Defendant Nieves' harassment of Plaintiff. For this reason, the Court hereby GRANTS Plaintiff's motion for summary judgment for the cause of action based upon *quid pro quo* sexual harassment.

## B.  Hostile Work Environment

The elements a plaintiff must prove to succeed in a hostile work environment sexual harassment claim are: (i) that she is a member of a protected class; (ii) that she was subject to unwelcome sexual harassment; (iii) that the harassment was based upon sex; (iv) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive working environment; and (v) that some basis for employer liability has been established. *Meritor,* 477 U.S. at 66–73, 106 S.Ct. at 2405–2408; *Horizons Hotel Corp.,* 831 F.Supp. at 14. Based on the same rationale in this Court's *quid pro quo* analysis, *supra,* Plaintiff meets the first three prongs of the hostile environment test.

The fourth prong—the severity and pervasiveness of Co–Defendant Nieves' conduct towards her—is also met. The uncontested facts demonstrate the severity of Co–Defendant Nieves' conduct. The facts demonstrate that not only did Co–Defendant Nieves' harassment occur in the workplace, but also that he went to the extreme of waiting for Plaintiff at her home and following her on the street. *See* Section II(15), *supra.* The final prong is also met in this case being that Co–Defendant Awning Windows, Inc. was well aware of Co–Defendant Nieves' conduct, as he was the president of the company. Hence, the evidence shows that the Defendants had knowledge of Plaintiff's hostile work environment created by Co–Defendant Nieves. For this reason, the Court hereby **GRANTS** Plaintiff's motion for summary judgment for the cause of action based upon a hostile work environment.

### C. Retaliation

■ Plaintiff claims that Defendants acted in a retaliatory manner prohibited by Section 704(a) of Title VII. To establish a prima facie case of retaliation under 42 U.S.C. § 2000e–3(a), Plaintiff must show that she engaged in protected conduct under Title VII, that she suffered an adverse employment action, and that a causal connection exists between the protected conduct and the adverse action. *See Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996); *see also Hazel v. United States Postmaster General*, 7 F.3d 1, 3 (1st Cir.1993). "Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *See Fennell*, 83 F.3d at 535. Once the defendant articulates a legitimate reason for the adverse employment decision, the presumption raised by the prima facie showing drops from the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The plaintiff thereafter must show that the defendant's proffered non-discriminatory reason for the employment action is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973); *see also Mesnick v. General Elec. Co.*, 950 F.2d 816, 823–24 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Of course, the ultimate burden of persuasion always rests with the plaintiff. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

■ Under 42 U.S.C. § 2000e–3(a), an employer may not retaliate against an employee who has either opposed any practice made unlawful under Title VII or has made a charge or participated in any matter in an investigation of sexual harassment. This encompasses the first prong of Plaintiff's prima facie case. *See Fennell*, 83 F.3d at 535. It is uncontested that Plaintiff denounced the sexually harassing behavior of Co–Defendant Nieves to her direct supervisor Francisco Martínez. *See* Section II (17, 12, 13, and 16), *supra*. Furthermore, Plaintiff was discharged in March 2000, thereby satisfying the second prong of Plaintiff's prima facie case. *See* Section II(17), *supra*. Plaintiff has created, and the uncontested facts concede, a factual nexus between her discharge and the sexualy harassing conduct of Co–Defendants. *See, e.g., Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988) (discharge soon after protected conduct raises strong inference of retaliation); *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988) (causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action").

The undisputed facts demonstrate that Plaintiff informed her direct supervisor of Co–Defendant Nieves' behavior. *See* Section II(13 and 16), *supra*. Plaintiff acknowledges that such efforts were for naught but were nevertheless made. For this reason, Plaintiff is considered to have engaged in a protected activity under the retaliation statute. *See* 42 U.S.C. § 2000e–3(e); *Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 44 (1st Cir.1999) (observing that plaintiff must file a complaint or report information to government to establish protected activity for Title VII retaliation claim) (citing *Hernández–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998)); *see also Fennell*, 83 F.3d at 536 (employee's complaint of sexual harassment to supervi-

sor constituted protected activity). For this reason, Plaintiff has demonstrated a prima facie case of retaliation, for which there are no disputed material facts to prohibit this Court from granting summary judgment. For this reason, the Court hereby **GRANTS** Plaintiff's motion for summary judgment for her cause of action based upon the theory of retaliation.

### D. Affirmative Defense

Although the undisputed facts reflect a prima facie case of sexual harassment and retaliation and Defendants have failed to oppose Plaintiff's motion, the Court nevertheless affords Defendants an opportunity to defend themselves by analyzing one of their affirmative defenses. Defendants raise the affirmative defense that it complied with law and regulations regarding sexual harassment. They contend that Plaintiff did not work directly with Co–Defendant Nieves and did not report to him. In *Faragher v. City of Boca Ratón,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the United States Supreme Court established an affirmative defense for employers in cases where a plaintiff seeks to hold its employer liable for the actionable conduct of a supervisor in creating a hostile work environment. If the employer establishes that it acted reasonably in attempting to prevent and correct any sexually harassing behavior, and further shows that the employee acted unreasonably in failing to avoid sexual harassment, such as by failing to take advantage of an internal complaint procedure, the employer avoids liability under Title VII. *See Faragher,* 524 U.S. at 807–08, 118 S.Ct. at 2292–93; *Ellerth,* 524 U.S. at 765, 118 S.Ct. at 2270.

▇▇▇ The affirmative defense, however, is only triggered when a plaintiff seeks to hold an employer liable under a theory of vicarious liability. Here, the alleged harasser is Co–Defendant Nieves, who at all relevant times was the president of Co–Defendant Awning Windows, Inc. Where the acts alleged to constitute sexual harassment are committed by the president of a corporation, such acts are directly imputable to the corporation. *See Faragher,* 524 U.S. at 789–90, 118 S.Ct. at 2284 (president of corporate employer "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy") (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Thereby rendering the affirmative defense useless.

Further, even assuming Co–Defendant Nieves was a supervisor within the scope of the *Faragher/Ellerth* affirmative defense, no such defense is available when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *See Faragher,* 524 U.S. at 807, 118 S.Ct. at 2292–93; *Ellerth,* 524 U.S. at 761–62, 118 S.Ct. at 2268–69; *see also Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 294 (2d Cir.1999). In this case, it is undisputed that Plaintiff was discharged from Awning Windows, Inc. in March 2000. *See* Section II(17), *supra.* Under these circumstances, Defendants may not raise as an affirmative defense Plaintiff's failure to make use of an internal mechanism provided by it to prevent or correct sexual harassing behavior.

### V. CONCLUSION

The Court **NOTES** that Plaintiff's "Motion for Summary Partial Judgment" is against all Defendants and is only partial in the fact that it does not attempt to prove damages but rather only seeks resolution on the question of liability. For the

aforementioned reasons, the Court hereby **GRANTS** Plaintiff's motion for summary judgment. The Court **SHALL** set a date for a damages hearing at the Further Scheduling Conference on March 25, 2003.

**IT IS SO ORDERED.**