# United States Court of Appeals
## For the First Circuit

No. 03-2277

MINERVA VÉLEZ A/K/A
MINERVA VÉLEZ-CORTES
A/K/A MINERVA VÉLEZ-CORTEZ,

Plaintiff, Appellee,

v.

AWNING WINDOWS, INC. AND ESTATE OF ISMAEL NIEVES-VALLE,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

Arturo Luciano Delgado for appellants.
Celina Romany, with whom Juan M. Frontera and Celina Romany
Law Offices were on brief, for appellee.

July 9, 2004

**SELYA**, **Circuit Judge**.  This appeal tells a cautionary tale of the risks run by parties who adopt a laissez-faire attitude toward court-imposed deadlines.  The defendants in this case — Awning Windows, Inc. (AWI) and the Estate of Ismael Nieves-Valle (the Estate) — acted in that fashion.  The district court, after patiently granting several extensions and issuing pointed warnings, finally decided that enough was enough.  It held the defendants to the deadlines previously announced, denied certain of their motions for noncompliance with the court's scheduling order, disregarded the defendants' tardy opposition to a motion for partial summary judgment, took the proffer of plaintiff-appellee Minerva Vélez-Cortes (Vélez) as true, and resolved the issue of liability in Vélez's favor.  A jury thereafter awarded Vélez nearly three-quarters of a million dollars in damages.  The defendants appeal.  Discerning no semblance of error, we affirm.

## I.  TRAVEL OF THE CASE

Vélez began work for a company owned by Ismael Nieves-Valle (Nieves) in 1987.  In time, Vélez and Nieves became romantically entangled.  Vélez claims that after she broke off their adulterous affair, she was sexually harassed.  She further claims that, in March 2000, this harassment culminated in her dismissal.

On March 26, 2002, Vélez commenced an employment discrimination action against AWI and Nieves in Puerto Rico's

federal district court.[1]  Her complaint invoked 42 U.S.C. §§ 2000e to 2000e-16 (Title VII) and a plethora of Puerto Rican discrimination statutes.  See, e.g., 29 P.R. Laws Ann. §§ 146, 155-155*l*.  Pretrial discovery revealed a dalliance gone sour and, on the plaintiff's account, an ensuing campaign of harassment leading to her discharge.

As this appeal turns largely on the travel and procedural history of the case, we eschew any further discussion of the facts at this point.  Instead, we set out a procedural chronology (each date refers to the time when the filing in question was entered on the district court's docket).

> 1. **March 26, 2002**.  The plaintiff instituted the action.
>
> 2. **April 30, 2002**.  The plaintiff moved for the entry of default, see Fed. R. Civ. P. 55(a), because the defendants failed to answer or otherwise plead within the allotted twenty-day period.
>
> 3. **May 3, 2002**.  The district court ordered the defendants to show cause, on or before May 15, why a default should not be entered.
>
> 4. **May 22, 2002**.  The plaintiff renewed her motion for entry of default, noting that neither defendant had responded to the show-cause order.
>
> 5. **May 31, 2002**.  The district court defaulted both defendants.

---

[1]Nieves owned several companies.  During the relevant time frame, Vélez worked for two of them.  These companies merged in 2002 to form AWI.

-3-

**6.  June 6, 2002**.  Citing Nieves's sudden death in a helicopter accident on May 25, AWI asked the district court to set aside the default and afford the defendants forty-five additional days within which to answer the complaint.

**7.  June 24, 2002**.  The district court granted the plaintiff's request to substitute the Estate in Nieves's stead as a party defendant. See Fed. R. Civ. P. 25(a)(1).  The court also granted AWI's request to set aside the default and ordered the defendants to answer or otherwise plead by July 19.  The court warned that failure to comply "on or before the aforementioned date **SHALL** result in the Court re-entering default and proceeding with a Damages Hearing."

**8.  July 11, 2002**.  The defendants answered the plaintiff's complaint.  Discovery then ensued.

**9.  November 15, 2002**.  The plaintiff moved for partial summary judgment on the issue of liability.

**10.  December 2, 2002**.  The defendants' opposition to the motion for partial summary judgment was due, but none was filed.

**11.  December 5, 2002**.  The district court granted the defendants until December 13 to submit their opposition.

**12.  December 13, 2002**.  Instead of filing their opposition by the extended deadline, the defendants moved for a further extension.

**13.  December 17, 2002**.  The district court held an omnibus scheduling conference (the OSC).

**14.  December 20, 2002**. The court entered an order that, inter alia, directed the defendants to file (i) no later than January 7, 2003, answers to the plaintiff's

-4-

interrogatories; (ii) no later than January 17, 2003, a legal memorandum, concerning the "admissibility of hearsay and other evidence" following a party's death prior to discovery; and (iii) no later than January 17, 2003, a memorandum detailing AWI's finances and the Estate's assets. The court admonished that the defendants' failure to comply with any of these directives would "result in sanctions including . . . elimination of all defenses set forth in their answer to the complaint."

In tandem with these orders, the court further extended the time for filing an opposition to the plaintiff's motion for partial summary judgment. The court fixed February 20 as the due date for the opposition, warned the defendants that "[n]o extensions will be given," and advised them that, should they "fail to file an opposition on or before the aforementioned date the Court **SHALL** consider Plaintiff's motion as unopposed."

**15. January 7, 2003.** The defendants served their answers to interrogatories.

**16. January 15, 2003.** The defendants filed a motion to dismiss, alleging that the plaintiff did not have a cause of action against Nieves (and, therefore, could not sue the Estate) because supervisors are not personally liable under Title VII.

**17. January 17, 2003.** The defendants moved for an extension of time, up to and including February 4, 2003, within which to file the hearsay memorandum and comply with the remaining commands of the OSC. Although the court took no immediate action on this motion, the defendants failed to make the required filings.

**18. February 5, 2003.** Citing the plaintiff's delay in completing her deposition and answers to interrogatories, the defendants moved to extend the deadline for filing an opposition

-5-

to the motion for partial summary judgment from February 20 to February 28.

**19.  <u>February 20, 2003</u>.**  (This was the date set by the district court for the filing of the opposition to the motion for partial summary judgment.)  Although the court had not yet ruled on their last previous motion for an extension, the defendants asked for another extension, this time to March 3, for the filing of their opposition.

**20.  <u>March 18, 2003</u>.**  The defendants made multiple submissions: (i) they finally filed their opposition to the plaintiff's motion for partial summary judgment; (ii) in the same memorandum, doubling in brass as a motion to dismiss, they claimed for the first time that the plaintiff had failed to file a timely administrative complaint with the Equal Employment Opportunity Commission (the EEOC) and that, as a consequence, her action should be jettisoned for want of subject-matter jurisdiction; and (iii) in a separate memorandum, they addressed the district court's hearsay concerns.

**21.  <u>March 20, 2003</u>.**  Faithful to its earlier warning that no extensions of time would be countenanced, the district court disregarded the defendants' out-of-time filings, denied their sundry extension requests, and deemed the plaintiff's motion for partial summary judgment unopposed.  As a sanction for the defendants' failure to comply with the court's earlier order to submit both a legal memorandum anent hearsay evidence (which had been filed over two months late) and a memorandum detailing the defendants' financial resources (which had not been filed at all), the court denied the defendants' motion to dismiss the supervisory liability claim.

**22.  <u>March 23, 2003</u>.**  The district court refused to dismiss the case for lack of subject-matter jurisdiction.

**23.  March 25, 2003.**  The district court handed down an opinion in which it granted the plaintiff's motion for partial summary judgment.  See Vélez Cortes v. Nieves Valle, 253 F. Supp. 2d 206 (D.P.R. 2003).  That decision resolved the issue of liability.

**24.  July 22-24, 2003.**  The district court convened a damages hearing before a jury and, pursuant to the jury's verdict, entered final judgment for the plaintiff in the sum of $740,000.

**25.  August 15, 2003.**  The defendants filed a timely notice of appeal.

## II.  DISCUSSION

The defendants' assignments of error can be grouped under three headings:  (i) errors concerning the lower court's entry of partial summary judgment; (ii) errors concerning the lower court's denial of the defendants' two motions to dismiss; and (iii) errors pertaining to the lower court's issuance of an order for legal memoranda anent hearsay evidence.  We address each grouping in turn.

### A.  The Motion for Partial Summary Judgment.

The defendants' principal complaint is that the district court erred in granting the plaintiff's motion for partial summary judgment without considering their late-filed opposition.  On the defendants' view of the proceedings, the trial judge's decision to commit the case to a fast-track schedule caused him to turn a blind eye to the defendants' pressing need for additional time to conduct discovery and muster their opposition.

-7-

We agree with the defendants that trial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.  See Carmona v. Toledo, 215 F.3d 124, 132-33, 135-36 (1st Cir. 2000); Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29-30 (1st Cir. 1996).  It follows that when a party moves for summary judgment, the opposing party must be afforded a fair chance to obtain and synthesize available information before being required to file an opposition.  Our cases make it pellucid, however, that this prophylactic rule is not self-executing.  A party who legitimately requires more time to oppose a motion for summary judgment has a corollary responsibility to make the court aware of its plight.

Typically, this is accomplished by way of either a Rule 56(f) motion or its functional equivalent.[2]  See Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 3-4 (1st Cir. 2004); Corrada

_____

[2]The rule provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

<u>Betances</u> v. <u>Sea-Land Serv., Inc.</u>, 248 F.3d 40, 44 (1st Cir. 2001). The record on appeal contains nothing of the sort: the defendants neither invoked nor substantially complied with Rule 56(f). To benefit from the protections of Rule 56(f), a litigant ordinarily must furnish the nisi prius court with a timely statement — if not by affidavit, then in some other authoritative manner — that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion. <u>See</u> <u>Vargas-Ruiz</u>, 368 F.3d at 4; <u>Paterson-Leitch Co.</u> v. <u>Mass. Mun.</u> <u>Wholesale Elec. Co.</u>, 840 F.2d 985, 988 (1st Cir. 1988). Such a litigant also must have exercised "due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter." <u>Resolution Trust Corp.</u> v. <u>N. Bridge Assocs., Inc.</u>, 22 F.3d 1198, 1203 (1st Cir. 1994).

The defendants' motions to extend time, filed on February 5 and February 20, do not satisfy these criteria.[3] Neither motion identifies a single sought-after fact. Neither motion indicates whether the desired information can be gathered within a reasonable

---

[3]We note that these motions, collectively, sought to extend the time for filing the defendants' opposition to March 3, 2003. In point of fact, the opposition was not filed until March 18, 2003.

interval. And neither motion relates how that information, if unearthed, would influence the outcome of the pending summary judgment motion.

What the February motions do attempt to provide are reasons why an extension should be granted. The defendants attribute their predicament to a week-long delay in the taking of the plaintiff's deposition, a week-long delay in the plaintiff's service of answers to interrogatories, and defense counsel's professed "need" to travel to Florida "in matters regarding to [sic] our legal profession." These are more excuses than reasons. The deposition was completed a full two weeks before the court-appointed deadline for filing an opposition, and the plaintiff answered the interrogatories in approximately the same time frame. Last — but far from least — the fact that counsel may have bitten off more than he could chew does not exempt him from meeting court-appointed deadlines. See Mendez v. Banco Popular, 900 F.2d 4, 6-7 (1st Cir. 1990) (collecting cases); see also Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir. 1978) (per curiam) ("Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences.").

The defendants now try to rectify some of their earlier omissions. In this court, they attribute the need for a further extension to a motley of events, including Nieves's untimely

demise, a switch in counsel resulting from his death, and the fact that the plaintiff's attorneys closed their offices for two weeks. These importunings are too little and too late. A party who seeks to be relieved from a court-appointed deadline has an obligation, at a bare minimum, to present his arguments for relief to the ordering court. An unexcused failure to do so constitutes a waiver. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) (explaining that matters not raised squarely in the district court cannot be raised for the first time on appeal).

Here, moreover, the defendants' proffered reasons are less than compelling. Nieves died on May 25, 2002 — almost nine months before the due date for the defendants' opposition. The switch in counsel occurred in that same time frame — and in any event, a party's decision to discharge one lawyer and retain another does not serve as a free pass to ignore court-appointed deadlines. Finally, the relevance of the office closing is less than obvious, and the defendants do nothing to enlighten us.

To cinch matters, it would strain credulity to characterize the defendants' pretrial discovery efforts in this case as duly diligent. As the chronology indicates, see supra Part I, the defendants dragged their feet from the very inception of the action. They had ample time to conduct discovery (roughly one year elapsed between the start of suit and the entry of partial summary judgment). By the same token, they had ample time to prepare an

opposition (the court allowed them over three months from the date the plaintiff filed her motion for partial summary judgment and approximately two months from the date of the OSC).  In the ordinary course, a party protesting what he believes to be a gadarene rush to judgment in the face of delayed discovery must have offered to the district court a credible and convincing explanation for his inability to obtain the necessary information within the time allotted.  See Vargas-Ruiz, 368 F.3d at 5.  The defendants' explanations fall far short.

Appellate review of a district court's case-management decisions is solely for abuse of discretion.  Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998); C.B. Trucking, Inc. v. Waste Mgmt., 137 F.3d 41, 44 (1st Cir. 1998).  Given the circumstances at hand, the district court plainly did not abuse its discretion in proceeding, when it did, to decide the motion for partial summary judgment.  After all:

> Rules are rules — and the parties must play by them.  In the final analysis, the judicial process depends heavily on the judge's credibility.  To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines.  If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.

Mendez, 900 F.2d at 7.

The defendants have a fallback position: they claim that genuine issues of material fact existed in the record and that the plaintiff was not entitled to a liability finding as a matter of law. We review the merits of the entry of partial summary judgment de novo. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). Our response will be brief.

Because the defendants failed to file an opposition to the motion for partial summary judgment by the court-appointed deadline (February 20, 2003), the district judge was entitled to consider the motion as unopposed and to disregard a subsequently filed opposition. See Mendez, 900 F.2d at 7-8 (collecting cases). In the same vein, the court was obliged to take the plaintiff's statement of uncontested facts as true. See D.P.R.R. 311.12; see also Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 14-15 (1st Cir. 2004).

That does not mean, however, that summary judgment should automatically follow. Even when faced with an unopposed motion for summary judgment, a court still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted. See Mendez, 900 F.2d at 7; see also Fed. R. Civ. P. 56(e) (instructing that if the adverse party fails to respond, "summary judgment, if appropriate, shall be entered") (emphasis supplied). The district court fully understood this nuance. It proceeded to align the undisputed facts and apply

-13-

the proper adjudicative rules for sexual harassment claims to those facts. We need not dwell on the court's resulting handiwork.

By their inaction, the defendants allowed the plaintiff to configure the summary judgment record. Confronted with a set of facts that pointed unerringly in one direction, the district court did its duty. "We have long proclaimed that when a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate." Lawton v. State Mut. Life Ins. Co., 101 F.3d 218, 220 (1st Cir. 1996). That principle pertains here. On the merits, therefore, we affirm the district court's entry of partial summary judgment for substantially the reasons elucidated in the district court's erudite rescript. See Vélez Cortes v. Nieves Valle, 253 F. Supp. 2d 206, 212-15 (D.P.R. 2003).

### B. **The Motions to Dismiss**.

The district court denied both of the defendants' motions to dismiss in the course of sanctioning them for their noncompliance with the OSC order. A disgruntled litigant bears a heavy burden in attempting to challenge the imposition of a sanction arising out of the violation of a case-management order. See United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993). Appellate review of such orders is for abuse of discretion. Rosario-Diaz, 140 F.3d at 315. An abuse of discretion presents itself "when a material factor deserving significant weight is

-14-

ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988).

Where, as here, a trial court is faced with flagrant disregard of a pretrial order, the court is authorized, either upon motion or sua sponte, to "make such orders with regard thereto as are just." Fed. R. Civ. P. 16(f). Rule 16(f) incorporates by reference the compendium of remedies listed in Fed. R. Civ. P. 37. That compendium includes "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(B). The trial judge in this case acted under the authority granted by this rule. The defendants contend that, in doing so, he ignored two material factors deserving significant weight and, thus, abused his discretion. See Indep. Oil & Chem. Workers, 864 F.2d at 929.

First, the defendants insist that they substantially complied with the requirements of the OSC order. Their insistence is belied by the record. In the first place, the financial disclosure required by the court's order was never made.[4] In the

---

[4]While it may be true that the defendants furnished some sort of financial statement to the plaintiff on December 6, 2002 (prior to the OSC), the district court obviously believed that more was required. The defendants must have understood this; after all, they abjured any objection when the court entered the December 20

second place, the defendants concede that the hearsay memorandum was not filed until March 18, 2003 — two months after the deadline mandated by the district court's scheduling order. That this belated filing occurred before the district court ruled on the motions to dismiss makes no dispositive difference.

The defendants' second argument is that the calendar established under the scheduling order was too rigorous. We already have dealt with the essence of this argument. See supra Part II(A). To that, we add what the chronology makes apparent: that the able trial judge bent over backwards to allow a reasonable time for completion of pretrial matters. The record makes manifest that the defendants' cavalier disregard of court-appointed deadlines, not the district court's intransigence, led to their downfall. Given the district court's largesse and its explicit warnings about the consequences of noncompliance, the court most assuredly did not abuse its discretion in hewing to its timetable.

In an effort to alter this conclusion, the defendants point out that the March 18 motion to dismiss implicated the court's subject-matter jurisdiction.[5] They then note that a

---

order mandating fuller financial disclosure. Their present contention is, therefore, waived. See Reilly v. United States, 863 F.2d 149, 159 (1st Cir. 1988) (explaining that a failure seasonably to object to a procedural order bars an appeal predicated thereon).

[5]The other motion to dismiss, filed January 15, 2003, need not concern us. That motion asserted that the claim against the Estate should be dismissed because the law does not provide for supervisory liability. While that may be true of Title VII,

-16-

federal court's subject-matter jurisdiction may not be waived. Bennett v. City of Holyoke, 362 F.3d 1, 7-8 (1st Cir. 2004). It follows, they say, that federal courts are precluded from sanctioning litigants by refusing to consider their motions to dismiss for lack of subject-matter jurisdiction.

That proposition is true as far as it goes, but it does not take the defendants very far. The March 18 motion was premised on the plaintiff's supposed failure to file timely charges with the EEOC. Over two decades ago, the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). That the defendants improperly classified this motion as raising a lack of subject-matter jurisdiction does not change its real nature. Consequently, the district court was free to consider the denial of the motion as a sanction.

We summarize succinctly. On an appeal from an order imposing sanctions for noncompliance with a case-management order, we must defer to the trial court's informed assessment of the

judgment was entered in this case pursuant to 29 P.R. Laws Ann. § 146. This statute imposes liability on supervisors for acts of sexual harassment. See Mejias Miranda v. BBII Acquis'n Corp., 120 F. Supp. 2d 157, 172 (D.P.R. 2000). Thus, any error in denying that motion to dismiss was harmless.

situation. See Rosario-Diaz, 140 F.3d at 315 ("[W]e acknowledge the trial judge's special coign of vantage and give him a wide berth to determine what sanction responds most aptly to a particular infraction."); Legault v. Zambarano, 105 F.3d 24, 26 (1st Cir. 1997) (discussing "the importance of supporting a trial court's decisions concerning sanctions"). Applying this deferential standard of review, we discern no abuse of discretion in the district court's decision to deny the motions to dismiss as a sanction.

## C. **The Hearsay Memorandum**.

The defendants expend considerable energy calumnizing the district court's method of handling the potential hearsay evidence issue in this case. They tell us that the court abused its discretion when it (i) ordered a memorandum on the admissibility of hearsay evidence too early in the proceedings, (ii) sanctioned the defendants (by precluding the use of certain hearsay testimony) for their failure seasonably to file the memorandum, and (iii) refused to consider the memorandum when it was submitted by the defendants two months late. These calumnies ring hollow.

If there is one abiding truth illustrated by the travel of this case, see supra Part I, it is that the defendants would have been better served expending their energies during discovery and other pretrial proceedings rather than on appeal. The record reflects that they arrived at the OSC unprepared to participate

-18-

effectively in the proceedings. There is no indication that they objected when the district court afforded them approximately one month within which to file "a memorandum concerning the admissibility of hearsay and other evidence in the occasion when a party has died prior to having given a deposition and/or prior to trial." Nor is any basis for an objection apparent. The January 17 deadline fixed by the court gave the defendants ample time within which to research the hearsay issue. Yet January 17 came and went without the filing of the requisite memorandum.

Courts are entitled — indeed, they should be encouraged — to ask counsel for input on legal issues that seem likely to arise in the course of trial. Here, the defendants squandered what should have been a welcome opportunity to persuade the court that hearsay evidence should be liberally admitted in view of Nieves's demise. When a litigant fails to comply with a case-management order, the court has substantial authority to impose a condign sanction. See Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 45-46 (1st Cir. 2002). We cannot say that the court below abused its discretion when it precluded certain hearsay testimony as a sanction for the defendants' protracted delay in submitting the memorandum in question. See Fed. R. Civ. P. 16(f) (providing, through reference to Rule 37(b)(2)(B), that a court may prohibit a litigant "from introducing designated matters in evidence" as a sanction for noncompliance with a scheduling order).

## III. CONCLUSION

To sum up, the record in the instant case is replete with instances of the defendants' disregard of court orders. Even so, the district court exhibited considerable patience in accommodating the defendants' lapses. And when the court finally drew a line in the sand, it gave the defendants explicit warning that further procrastination would risk severe consequences. To accuse the court of abusing its discretion because the defendants chose struthiously to ignore this warning stands logic on its ear.

We need go no further. For the reasons alluded to above, we uphold the entry of judgment for the plaintiff.

**<u>Affirmed</u>**.