# United States Court of Appeals
## For the First Circuit

No. 06-2495

NELSON RIVERA-TORRES ET AL.,

Plaintiffs, Appellants,

v.

CESÁR REY-HERNÁNDEZ ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Howard, Circuit Judge,
Selya, Senior Circuit Judge,
and Dyk,** Circuit Judge.

Francisco R. González Colón, with whom F.R. González Law Office was on brief, for appellants.
Luis Rodríquez Muñoz, with whom Roberto Sánchez Ramos, Secretary of Justice, Salvador Antonetti Stutts, Solicitor General, Eduardo Vera Ramírez, and Landrón & Vera, LLP were on brief, for appellees.

September 6, 2007

*Of the Federal Circuit, sitting by designation.

**SELYA**, <u>Senior Circuit Judge</u>.   The Bard of Avon once warned that "delays have dangerous ends." William Shakespeare, <u>The First Part of King Henry the Sixth</u> act 3, sc. 2.  This case, in which the plaintiffs procrastinated for the better part of three years and cavalierly flouted the discovery deadlines announced by the district court, bears out that admonition.  The tale follows.

The pertinent facts are easily summarized.  The sixty-four plaintiffs claim to be members of the New Progressive Party (NPP).  In the turn-of-the-century general election, held in November of 2000, the NPP lost control of Puerto Rico's central government and its main rival, the Popular Democratic Party (PDP), ascended to power.  A new administration took office in January of 2001.

As part and parcel of this changing of the guard, César Rey-Hernández (Rey) became Secretary of the Puerto Rico Department of Education (DOE).  He, in turn, appointed José Aldanondo-Rivera (Aldanondo) to head up the DOE's adult education program (AEP) and Santos Meléndez as the AEP's general supervisor.  All of these men had ties to the PDP.

Prior to the 2001-2002 school year, the plaintiffs were employed by the AEP under serial one-year contracts.  Those contracts were not renewed for the 2001-2002 school year.  When that happened, the plaintiffs sued Rey, Aldanondo, and Meléndez in the federal district court.  Invoking 42 U.S.C. § 1983 and various

-2-

provisions of Puerto Rico's civil code, they chiefly alleged political discrimination. See, e.g., Branti v. Finkel, 445 U.S. 507, 515-16 (1980); Elrod v. Burns, 427 U.S. 347, 373 (1976).

From our coign of vantage, the travel of the case is more important than the details of the plaintiffs' substantive claims. Consequently, we do not dwell on their allegations but, rather, limn the relevant procedural history. This is the chronology:

1. **June 23, 2003**. The plaintiffs commenced their civil action.

2. **August 19, 2004**. The district court issued a case-management order that, among other things, required discovery to be completed by January 15, 2005.

3. **August 30, 2004**. The plaintiffs filed an amended complaint designed to add the nine regional directors of the AEP as additional defendants. The district court issued summonses to be served on the regional directors by September 20, 2004.

4. **February 21, 2005**. The plaintiffs (who had not yet served the regional directors) moved for re-issuance of the now-expired summonses.

5. **March 3, 2005**. With the discovery deadline already in the rear-view mirror, the plaintiffs requested an additional period of between 30 and 50 days within which to conduct discovery.

6. **March 22, 2005**. The plaintiffs sent written depositions to the regional directors without subpoenaing them even though the regional directors had never been served with summonses or otherwise made parties to the case.

**7. April 7, 2005**. The district court refused to re-issue summonses for the regional directors (see Item No. 4, supra), calling the plaintiffs' failure to serve them in a timely manner "inexcusable" and "negligent." The court also denied the plaintiffs' request to reopen the discovery period (see Item No. 5, supra). In its order, the court left the parties free to conduct consensual discovery, but warned that it "will not entertain any disputes regarding . . . discovery" and that "[no] deadlines or settings [will] be changed."

**8. July 29, 2005**. Citing the dismissal of a federal discrimination claim in another case involving the AEP,[1] the district court gave the defendants until September 30, 2005 (later extended until October 24, 2005) to file dispositive motions. The court gave the plaintiffs until November 30, 2005 to file oppositions to any such motions.

**9. October 23, 2005**. The defendants filed a motion for summary judgment.

**10. October 25, 2005**. The plaintiffs requested an additional period (until January 20, 2006) within which to oppose the summary judgment motion.

**11. November 8, 2005**. The district court granted the plaintiffs their requested extension to file an opposition to the summary judgment motion (see Item No. 10, supra). The court warned explicitly that "no more extensions will be allowed."

**12. January 18, 2006**. Notwithstanding the district court's express caveat (see Item No. 11, supra), the plaintiffs requested a further extension, until March 20, 2006, for

---

[1]The decision that the district court cited was recently affirmed on appeal. See Hatfield-Bermudez v. Aldanondo-Rivera, ___ F.3d ___ (1st Cir. 2007) [2007 WL 2231623]. It has no bearing on the issues before us.

-4-

filing an opposition to the summary judgment motion.

**13.** **March 3, 2006**. The plaintiffs subpoenaed documents held by Rey's successor as Secretary of Education, Rafael Aragunde (not a party to the action). Among other things, the subpoena sought a list of all school directors and other employees of the AEP during the 2000-2001 and 2001-2002 academic years. The plaintiffs never received the list and the defendants deny that such a list ever existed.

**14.** **March 7, 2006**. The plaintiffs filed yet another motion for an extension of time to respond to the summary judgment motion. This time, they invoked Fed. R. Civ. P. 56(f) and professed a need for more discovery in order to oppose summary judgment. In an accompanying memorandum, their attorney claimed that he needed to depose the regional directors before composing such an opposition.

**15.** **March 23, 2006**. The defendants requested that the court deem their summary judgment motion unopposed.

**16.** **April 5, 2006**. The case was transferred to the calendar of a newly appointed district judge.

**17.** **May 31, 2006**. The district court denied as moot the plaintiffs' January 18, 2006 request for an extension of time within which to oppose the summary judgment motion (see Item No. 12, supra).

**18.** **August 14, 2006**. Pursuant to the filling of yet another judicial vacancy, the case was again transferred to the calendar of a newly-appointed district judge.

**19.** **August 17, 2006**. The district court denied the Rule 56(f) motion (see Item No. 14, supra) and granted the defendants' entreaty to deem the summary motion unopposed (see Item No. 15, supra).

-5-

**20.  August 23, 2006**.  Discerning no genuine issue as to any material fact, the district court (Gelpí, J.) entered summary judgment in favor of the defendants.

This timely appeal ensued.  In it, the plaintiffs assail the district court's refusal to grant further extensions of the discovery deadline; its decision to deem the summary judgment motion unopposed; and its subsequent entry of summary judgment.

For the most part, these claims of error are so weak as not to warrant extended discussion.  The district court exhibited great patience with the plaintiffs, warned them explicitly that continued noncompliance would have consequences, and took final action only when the plaintiffs had piled delay upon delay.  "[C]ourts — like the deity — are more prone to help those who help themselves," Williams v. Drake, 146 F.3d 44, 50 (1st Cir. 1998), and the plaintiffs, through their indolence, forfeited any plausible claim to further indulgences.

The one point that merits elaboration is the plaintiffs' attempt to invoke Federal Rule of Civil Procedure 56(f).[2]  We turn

---

[2]The rule states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

to the district court's ruling on that issue, mindful that a district court's denial of a Rule 56(f) motion is reviewed on appeal solely for abuse of discretion. See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 44 (1st Cir. 1998).

We begin with bedrock: Rule 56(f) serves a salutary purpose within the summary judgment framework. When a party confronted by a motion for summary judgment legitimately needs additional time to marshal the facts necessary to mount an opposition, the rule provides a useful safety valve. See Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994). Deployed appropriately, "[t]he rule . . . safeguard[s] against judges swinging the summary judgment axe too hastily." Id.

Be that as it may, the prophylaxis of Rule 56(f) is not available merely for the asking. A litigant who seeks to invoke the rule must act with due diligence to show that his predicament fits within its confines. To that end, the litigant must submit to the trial court an affidavit or other authoritative document showing (i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to

defeat the pending summary judgment motion.  See Vélez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1998).

We add a further caveat: Rule 56(f) is not designed to give relief to those who sleep upon their rights.  See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996). Consequently, a party seeking to derive the benefit of Rule 56(f) must demonstrate due diligence both in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion has surfaced.  See Resolution Trust, 22 F.3d at 1203.

Viewed through this prism, we do not think that the district court abused its discretion in denying the plaintiffs' Rule 56(f) motion.  In the first place, the plaintiffs' proffer fell far short of the requisite showing.  In the second place, the plaintiffs' conduct, both before and after the emergence of the summary judgment motion, was characterized by the polar opposite of due diligence.  We explain briefly.

To begin, the plaintiffs' Rule 56(f) motion failed to show good cause for their professed inability to conduct the desired discovery at an earlier date.  The district court afforded the parties a reasonable interval for pretrial discovery — they had

almost 18 months from the inception of the action — and, for aught that appears, the plaintiffs simply frittered the time away.

This is not to say that the plaintiffs are short on excuses; they variously blame the defendants' uncooperative attitude during discovery, the regional directors' evasiveness, the transfer of the case from judge to judge, and what they perceive as a gadarene rush to judgment in the summer of 2006. But once past the plaintiffs' rhetorical flourishes, the frailty of these excuses becomes readily apparent. None of them shows good cause for the plaintiffs' inordinate delay.

The claim that the defendants disrupted the discovery process is belied by the plaintiffs' abject failure to use the available means of discovery during the generous discovery period allowed by the district court. Indeed, the plaintiffs' claim of disruption centers on something that occurred after the close of formal discovery and during the subsequent period of consensual discovery permitted by the district court (see Item No. 8, supra): the defendants' refusal to hand over a list of AEP directors and employees for the 2000-2001 and 2001-2002 school years. In addition to an obvious lack of timeliness, this claim suffers from no fewer than three major infirmities: the plaintiffs have not shown that such a list existed, nor have they shown that they could not have compiled such a list themselves from the copious documents transmitted to them in the discovery process, nor have they shown

that they seasonably availed themselves of any of the usual remedies for a failure of production during the discovery period. See, e.g., Fed. R. Civ. P. 37.

In all events, the list had no direct bearing on the plaintiffs' ability to conduct the discovery sought in their Rule 56(f) motion: the depositions of the regional directors. Those depositions could (and should) have been taken in a timely manner regardless of the availability of the evanescent list.

Much the same can be said about the plaint that the regional directors' failure to answer the written depositions addressed to them handicapped the plaintiffs. First, the plaintiffs' appellate brief conspicuously fails to justify why they failed to submit the written depositions (and subpoena the witnesses, if necessary) within the discovery period. Second, notwithstanding the regional directors' lack of cooperation, the plaintiffs inexplicably waited an entire year before asking the court for additional discovery vis-à-vis the regional directors.

This brings us to the plaintiffs' importuning that the transfer of the case from judge to judge, together with Judge Gelpí's prompt adjudication of outstanding motions once the case was assigned to his calendar, unfairly surprised them. This importuning rings hollow. Parties have no vested right to have their cases heard by a particular judge. See United States v. Colon-Munoz, 292 F.3d 18, 22 (1st Cir. 2002); Sinito v. United

*States*, 750 F.2d 512, 515 (6th Cir. 1984). And to deem the court's adjudication "hasty" is ludicrous. Nearly ten months passed between the filing of the defendants' motion for summary judgment and the granting of the defendants' request to deem that motion unopposed. That hardly can be characterized as a rush to judgment. *Cf.* D.P.R.R. 7(b) (allowing ten days within which to respond to motions).

To cinch matters, the district court explicitly warned the plaintiffs in November of 2005 that no further extensions of time would be permitted in connection with the pending summary judgment motion. *See* Item No. 11, *supra*. Given this aposematic statement, the plaintiffs had every reason to believe that continued inattention to the summary judgment motion would prove problematic. Parties ought to expect that courts will say what they mean and mean what they say. *See*, *e.g.*, *Torres* v. *Puerto Rico*, 485 F.3d 5, 10 (1st Cir. 2007). Seen in this light, the district court's disposition of the motion in August of 2006 could not have come as a surprise.

At the expense of carting coal to Newcastle, we add that the plaintiffs also failed to satisfy the second and third elements of the Rule 56(f) standard. The motion papers disclose no plausible basis for a belief that deposing the regional directors would lead to material facts that might defeat summary judgment. To the contrary, the motion is wholly conclusory; it merely states

-11-

that "the information that could be obtained from the regional directors' depositions [is] essential" to crafting an opposition to the summary judgment motion. Speculative conclusions, unanchored in facts, are not sufficient to ground a Rule 56(f) motion. See, e.g., Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 4 (1st Cir. 2004) (explaining that, in this context, a plaintiff's "optimistic surmise" carries no weight); Paterson-Leitch, 840 F.2d at 989 (stating that "cryptic allusions [that] fail[] to set out any basis for believing that some discoverable material facts . . . exist" are "entirely insufficient to extract the balm of Rule 56(f)").

The final straw is the plaintiffs' utter disregard for deadlines throughout the course of this litigation. The plaintiffs were afforded ample time within which to conduct discovery. They were given one extension and warned that no further extensions would be forthcoming. In all, a full twenty-eight months passed between the commencement of the action and the filing of the summary judgment motion. We think it significant that, early on, the plaintiffs recognized the potential importance of the regional directors; after all, they attempted to amend their complaint to add the regional directors as defendants on August 30, 2004 (see Item No. 3, supra). At that point in time, the discovery period was still open and the summary judgment motion was more than a year from being filed. The plaintiffs nonetheless neglected to secure

the regional directors' testimony during the time allotted for pretrial discovery.

Even after the defendants moved for summary judgment, the plaintiffs dragged their feet: they lollygagged more than five months before filing their Rule 56(f) motion and announcing their professed need to depose the regional directors. That was too little and too late: Rule 56(f) is meant to minister to the vigilant, not to those who sleep upon perceptible rights.

On this record, we conclude without serious question that the district court acted within the realm of its discretion in denying the plaintiffs' Rule 56(f) motion.[3] Relatedly, we conclude that the court, faced with a summary judgment motion that had been pending for nearly ten months without a substantive response, acted within its discretion in deeming that motion unopposed. See Vélez, 375 F.3d at 41.

That brings us to the merits of the motion for summary judgment. We have reviewed that motion and the supporting papers, mindful that even an unopposed motion for summary judgment should not be granted unless the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to

---

[3]As an added justification for their failure to oppose the motion for summary judgment in a timely manner, the plaintiffs allude to their counsel's poor health. This allusion does not help their cause: the attorney's "transient ischemic attack" reportedly occurred on June 13, 2006 — five months after the opposition was due and three months after the plaintiffs filed their (inadequate) Rule 56(f) motion.

judgment as a matter of law.  See id. at 42; Mendez v. Banco Popular de P.R., 900 F.2d 4, 7-8 (1st Cir. 1990); see also Fed. R. Civ. P. 56(e) (instructing that if the adverse party fails to respond, "summary judgment, if appropriate, shall be entered") (emphasis supplied).  The instant motion passes that rigorous test.

We need go no further.  The plaintiffs have made a gallimaufry of other arguments, but all of them are either plainly incorrect, insufficiently developed, or both.  Accordingly, we hold that the district court did not err in entering summary judgment in favor of the defendants.

**Affirmed**.