Juan A. PICO VIDAL, Appellant,

v.

Fernando RUIZ ALVARADO and
Carmen M. Velez Ramos,
Appellees.

Civil No. 07–1655 (GAG).
Bankruptcy No. 02–0743 (BKT).

United States District Court,
D. Puerto Rico.

Oct. 26, 2007.

Katiria M. Perez Lopez, Dennis J. Cruz–Perez, Ponce, Puerto Rico, for plaintiff.

Noemi Landrau–Rivera, Nancy Pujals, Monsita Lecaroz–Arribas, San Juan, Puerto Rico, for defendant.

### OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

This appeal arises from a decision and order of the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court") granting partial summary judgment in favor of Fernando Ruiz Alvarado and Carmen M. Velez Ramos (collectively "the Debtors") and against Juan A. Pico. After carefully reviewing the parties' briefs and the record, the court **REVERSES** the judgment of the Bankruptcy Court.

## I. Relevant Background

According to the Bankruptcy Court docket, the facts and travel of the case are as follows. On January 25, 2002, the Debtors filed a Chapter 13 voluntary petition in the Bankruptcy Court. On July 7, 2003, they filed the present adversary proceeding. In the complaint, the Debtors contend that in the early 1970's they signed a lease for a property on the Ponce By–Pass with Arturo Pico, Jr. ("Mr. Pico"). At that time, the property was barren. After leasing the property, the Debtors assert that they built three structures, which they subleased with Mr. Pico's permission.

At the time of the filing of the present bankruptcy case, the Debtors aver that their main source of income was the rent payments from the subleases. They assert that on March 11, 2003, they were informed that Mr. Pico's property was adjudicated to his widow, Teresa C. Vidal ("Mrs. Vidal"), and that it was her intention to have the Debtors vacate the leased premises immediately. In addition, the Debtors assert that Mrs. Vidal informed the Debtors' tenants that the Debtors were not the owners of the property and that from then on, they had to pay the rent directly to Mrs. Vidal. The Debtors maintain that due to this situation they are in arrears in their Chapter 13 plan and that this constitutes a violation of the automatic stay, since Mrs. Vidal did not file any action ion the local court to officially request that the Debtors vacate the property. Furthermore, they aver that Mrs. Vidal did not give them a reasonable time to vacate the premises, which they have been occupying for more than 30 years. The Debtors argue that, under Puerto Rico law, they are entitled to receive credit for the structures built by them, which cannot be removed without permanent damage to

the property. In light of the above, the Debtors requested that the Bankruptcy Court: (1) hold a hearing to determine whether Mrs. Vidal's actions constitute a violation of the automatic stay; (2) issue an order determining that Mrs. Vidal's actions constitute a violation of the automatic stay; (3) enter judgment against Mrs. Vidal in such amounts as the evidence shows; (4) award Debtors costs, fees, disbursements and such other relief as may be deemed just and proper; and (5) enter a protective order of injunction against Mrs. Vidal prohibiting her from continuing to deter Debtors from collecting the rents due from the structures on the property and evicting the Debtors from the leased premises without the corresponding order form the local court.

The Bankruptcy Court held a hearing on July 18, 2003, regarding the protective order requested by the Debtors. On July 24, 2003, the Bankruptcy Court entered a protective order requiring Mrs. Vidal to cease and desist from all acts to collect rent from Debtors' tenants and prohibiting Mrs. Vidal from commencing a judicial eviction action against Debtors or their tenants. Also, the tenants were specifically ordered to continue paying monthly rent to Debtors, commencing in the month of July 2003 until the Bankruptcy Court ordered otherwise. Furthermore, the Bankruptcy Court ordered that any rent paid to Mrs. Vidal for the month of July 2003 was to be paid to the Debtors and the rent collected by Mrs. Vidal, for the months of March 2003 until June 2003, was to be deposited with the Clerk of the Bankruptcy Court.

On July 31, 2003, Juan A. Pico ("Appellant"), Mrs. Vidal's son, filed an informative motion, stating that Mrs. Vidal had died and that he is the owner of the property subject to the adversary proceeding. On September 11, 2003, Appellant filed another motion, informing that he had complied with the protective order and that he consigned with the Clerk of the Bankruptcy Court the rent payments received for the months of March 2003 to June 2003. He also stated that he had not commenced a judicial or extra-judicial eviction against the Debtors or their tenants.

On December 29, 2003, after Mrs. Vidal's death, the Debtors filed an amended complaint to substitute Mrs. Vidal with her sons and heirs, Appellant and Arturo Pico ("Arturo"), and to include as co-defendants Debtors' tenants. In the amended complaint, the Debtors aver that they personally notified Appellant and Arturo of the Bankruptcy petition. They assert that on March 11, 2003, they received notification from Defendants in the name of their mother Mrs. Vidal, claiming ownership and title over the property of the estate and requesting that Debtors immediately vacate the property, without compensation for the structures and businesses established on the property. The Debtors maintain that despite the fact that Defendants knew of Debtors' bankruptcy and of the fact that the lease contract and sublease contracts were assumed by the Defendants, since March 31, 2003, four of Debtor's tenants ceased to pay rent to the Debtors due to Appellant and Arturo's interference with the tenants. The Debtors claim that Appellant and Arturo are liable in the amount of $100,000.00 in compensation for the structures built by the Debtors and $200,000.00 due to interference with Debtors' contractual relationship with their tenants. The Debtors also claim $100,000.00 in emotional damages for depression, severe stress and loss of sleep resulting from the extrajudicial eviction. Debtor Fernando Ruiz Alvarado specifically alleges that he had to undergo heart surgery due to stress related to Defendants' action. Finally, the Debtors seek $100,000.00 in punitive damages for the

wilful violation of the automatic stay. With respect to the tenants, the Debtors claim that the tenants failed to pay rent owed after they became aware that the Debtors were not the owners of the property. As for these claims, the Bankruptcy Court entered a default against all four tenants and judgment by default in Debtors' favor.

On December 9, 2005, the Bankruptcy Court ordered the parties to conclude discovery by January 31, 2006 and ordered dispositive motions to be filed no later than February 28, 2006. On February 9, 2006, Arturo filed a motion for summary judgment. On April 27, 2006, the Debtors filed a motion for partial summary judgment against Juan, contending that Appellant violated the automatic stay with full knowledge and intention of doing so, that he wrongfully interfered with the contractual relationship between Debtors and their tenants, and that he is liable for compensation for the structures built in good faith by the Debtors. On May 5, 2006, the Debtors supplemented their request for partial summary judgment. On the same day, Appellant filed an opposition to the Debtors' motion for partial summary judgment, stating that Debtors filed it well beyond the deadline of February 28, 2006, given by the Bankruptcy Court to file dispositive motions, and requesting in the alternative an extension of time to file a response. On May 10, 2006, the Debtors' filed a reply to said opposition. On the same day, the Debtors requested that the Bankruptcy Court hold in abeyance the pretrial hearing set for May 12, 2006, pending the outcome of the summary judgment requests. On May 12, 2006, the Bankruptcy Court granted the Debtors' request that the pretrial hearing be held in abeyance and continued the hearing for August 15, 2006. On August 15, 2006, the Bankruptcy Court cancelled the pretrial hearing pending the outcome of the various dispositive motions filed. On October 31, 2006, the Debtors submitted translated exhibits of their request for summary judgment. On December 18, 2006, the Bankruptcy Court entered an opinion and order granting Arturo's motion for summary judgment and the Debtors' motion for partial summary judgment. With respect to the latter, the Bankruptcy Court held that the Debtors had met their burden of showing that there are no genuine issues of material fact, that Appellant willfully violated the automatic stay and aided and abetted Mrs. Vidal in actions that constitute a willful violation of the automatic stay, that Appellant had notice of the stay, and that he intentionally interfered with the Debtors' lease, sublease and rent payments. Appellant now appeals this decision.

## II. Jurisdiction

■ This court has jurisdiction to hear bankruptcy appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. 158 § (a)(1) or "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). It is well settled that an order granting partial summary judgment is not a final judgment, order, or decree, absent "some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned, is the end of the case." *In re Olympic Mills Corp.*, 333 B.R. 540, 547 (1st Cir. BAP 2005) (quoting *Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir.1995)). Federal Rule of Civil Procedure 54(b) permits the entry of final judgment as to fewer than all the parties or all the claims in a multi-party action "upon an express determination that there is no just reason for delay" in entering judgment. Fed.R.Civ.P. 54(b). The Bankruptcy Court made the requisite finding and directed entry of a final judg-

ment notwithstanding that there were certain issues which remained unadjudicated. As the Bankruptcy Court certified the partial summary judgment order as final pursuant to Rule 54(b), this court has jurisdiction to consider that portion of the appeal pursuant to 28 U.S.C. 158 § (a)(1).

## III. Standard of Review

■ In reviewing the Bankruptcy Court's decision granting partial summary judgment for Debtors, the court applies *de novo* review. *In re Olympic Mills Corp.,* 477 F.3d 1, 14 (1st Cir.2007) (citing *In re Schifano,* 378 F.3d 60, 66 (1st Cir.2004)). Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56(c) as the appropriate standard for deciding a motion for summary judgment. Fed.R.Bankr.P. 7056. Under Rule 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party has the burden of establishing the nonexistence of a genuine issue of material fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. This burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *Id.* at 331, 106 S.Ct. 2548. The moving party may discharge its burden by "pointing out to the district court … that there is an absence of evidence to support the nonmoving party's case." *Id.* After the moving party makes this initial showing, the "burden shifts to the nonmoving party with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548). To meet this burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* If the court finds that some genuine factual issues remain, the court must deny the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. Discussion

On appeal, Appellant argues that: (1) the Bankruptcy Court's decision and order violates his substantive due process; (2) the automatic stay does not apply to this case because the Debtors were occupying a nonresidential property under an expired lease; and (3) there are genuine issues of material fact that prevent a rational fact finder from finding in Debtors' favor under the standard of clear and convincing evidence. The court will examine these arguments to determine whether the Bankruptcy Court erred when it granted the Debtors' motion for partial summary judgment.

### A. Substantive Due Process

■ Appellant argues that the Bankruptcy Court's decision violated his substantive due process because the Debtors

did not have an interest, at the time that they filed for bankruptcy, in the lease agreement that is part of the bankruptcy estate. Section 541 of the Bankruptcy Code enumerates the types of property interests that are included in the bankruptcy estate. The estate is defined broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[U]nexpired leasehold interests, including subleases, constitute property of the bankruptcy estate." *In re Stoltz,* 197 F.3d 625, 629 (2d Cir. 1999) (quoting *In re 48th St. Steakhouse, Inc.,* 835 F.2d 427, 430 (2d Cir.1987)). *See also* H.R.Rep. No. 595, 95th Cong., 2d Sess. 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News. 5963, 6323; S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868 ("Debtor's interest in property also includes 'title' to property, which is an interest, just as are a possessory, or leasehold interest."). The term "unexpired" is not defined in the Bankruptcy Code itself or in its legislative history. Instead, because property interests are created and defined by state law, federal courts have looked to state law to determine a debtor's interest, including leasehold interests, in the bankruptcy estate. *See, e.g., Nobelman v. American Sav. Bank,* 508 U.S. 324, 328, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (looking to Texas law); *In re Williams,* 144 F.3d 544, 546 (7th Cir.1998) (looking to Illinois law); *In re Waterkist Corp.,* 775 F.2d 1089, 1091 (9th Cir.1985) (looking to Alaska law). Accordingly, the court looks to Puerto Rico law to determine the Debtors' interest, if any, in the lease agreement at the time that the Debtors filed their Chapter 13 bankruptcy petition.

■ Under Puerto Rico law, three elements characterize a lease contract: (1) the thing; (2) temporal duration; and (3) a price. *Matter of Daben Corp.,* 469 F.Supp. 135, 148 (D.P.R.1979). Here, all three elements were present when the Debtors filed their Chapter 13 bankruptcy petition on January 25, 2002. At that time, the Debtors had a month-to-month lease. They were occupying the lot and making payments, which Appellant received. Two additional letters support the conclusion that the Debtors had a valid lease when they filed for bankruptcy. On June 8, 2002, Mr. Pico wrote a letter saying that "since the year 1973 I have been renting a parcel of land of 520 square meters to Mr. Fernando Ruiz ... The rent which Mr. Ruiz pays me is $750.00 per month." *See* Appendix, Docket No. 11 at p. 267. On March 11, 2003, the Debtors received a letter from Mrs. Vidal terminating their lease and instructing them to leave the property. *Id.* at 245. These two letters were written after the Debtors filed their Chapter 13 bankruptcy petition. In light of the above, the court finds that the Bankruptcy Court did not err as a matter of law when it found that the Debtors had an interest in the lease agreement at the time they filed for bankruptcy.

■ Alternatively, Appellant argues that the Bankruptcy Court's decision violated his substantive due process because the Bankruptcy Court considered the Debtors' untimely motion for partial summary judgment. Appellate review of a court's management decisions is solely for abuse of discretion. *Velez v. Awning Windows, Inc.,* 375 F.3d 35, 41 (1st Cir.2004) (citing *Rosario–Diaz v. Gonzalez,* 140 F.3d 312, 315 (1st Cir.1998); *C.B. Trucking, Inc. v. Waste Mgmt.,* 137 F.3d 41, 44 (1st Cir.1998)). Thus, a party adversely affected by a court's case management decision "bears a formidable burden" in seeking reversal. *United States v. One 1987 BMW 325,* 985 F.2d 655, 657 (1st Cir.1993).

■ Here, the Debtors filed their motion for partial summary judgment 58 days after the deadline for filing dispositive motions. Because this motion presented relatively straightforward issues, the court holds that the Bankruptcy Court did not abuse its discretion when it considered the motion. *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 58 (1st Cir.2000) (holding that district court did not abuse its discretion in entertaining employee's motion for summary judgment, filed 61 days after court-imposed deadline, because, *inter alia*, the motion presented a relatively straightforward issue).

■ Appellant also contends that the Bankruptcy Court violated his substantive due process when it ruled on the Debtors' motion for partial summary judgment without deciding on Appellant's motion for an extension of time to reply to the Debtors' motion for partial summary judgment. The record shows that the Debtors filed their motion for partial summary judgment on April 27, 2006. On May 5, 2006, Appellant filed an opposition to said motion stating that Debtors filed it well beyond the deadline of February 28, 2006, given by the Bankruptcy Court to file dispositive motions, and requesting in the alternative an extension of 20 days to file a response. On May 12, 2006, the Bankruptcy Court entered an order continuing the pretrial hearing to August 15, 2006, subject to the resolution of the summary judgment requests. On August 15, 2006, the Bankruptcy Court cancelled the pretrial hearing pending the outcome of the various dispositive motions filed. On December 18, 2006, the Bankruptcy Court issued an opinion and order granting the Debtors' motion for summary judgment as unopposed. Because more than seven months had elapsed from the time that Appellant requested an extension of 20 days and because Appellant had been notified twice about the pending motions for summary judgment, the court finds that the Bankruptcy Court did not abuse its discretion when it deemed the Debtors' motion for partial summary judgment as unopposed. *C.f. Rivera–Torres v. Rey–Hernandez*, 502 F.3d 7, 13 (1st Cir.2007) (concluding that the trial court, faced with a summary judgment motion that had been pending for nearly ten months without a substantive response, acted within its discretion in deeming that motion unopposed).

### B. Automatic Stay

■ Appellant argues that the automatic stay does not apply to this case because the Debtors were occupying a nonresidential property under an expired lease. "The automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors." *In re Jamo*, 283 F.3d 392, 398 (1st Cir.2002). Under 11 U.S.C. § 362(a)(3), the filing of a bankruptcy petition operates as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." When a creditor willfully acts after the filing of a petition under 11 U.S.C. § 301 to obtain possession of the estate property, the debtor may recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 326(k)(1).

■ The property at issue in this case is a nonresidential property. The Debtors leased this property from Appellant's family for over 30 years. Under 11 U.S.C. § 362(b)(10), the automatic stay does not apply to "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a

case under this title to obtain possession of such property." Here, the Debtors received a letter from Mrs. Vidal on March 11, 2003 cancelling the lease agreement and asking them to leave the property. *See* Appendix, Docket No. 11, at p. 249. Nine days later, on March 20, 2003, Mrs. Vidal sent a letter to Debtors' tenants informing them that Debtor Ruiz "was notified that as of March 31, 2003 the rental of the properties he leased month to month will end. Beginning on April 1st, 2003, I will take control of these properties . . ." *Id.* at 271–72. After March 31, 2003, the Debtors stopped receiving rents from their tenants. Neither Mrs. Vidal nor Appellant moved the Bankruptcy Court to lift the stay before seeking to evict the Debtors. "[C]ourts have recognized that a tenant's possessory interest in property is included in the bankruptcy estate when the bankruptcy petition is filed and thus the landlord must seek relief from the automatic stay prior to terminating the lease or instituting eviction proceedings." *McAdam v. Lorden*, 2005 WL 2340739 *4 (D.N.H.2005) (citing *In re Atlantic Bus. and Cmty. Corp.*, 901 F.2d 325, 328 (3d Cir.1990); *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir.1987)). Moreover, "[r]elief from the automatic stay of an act against property is possible under 11 U.S.C. § 362(d)(2) if the debtor has no equity in the property and the property is not necessary for an effective reorganization." *B.N. Realty Assocs. v. Lichtenstein*, 238 B.R. 249, 258 (S.D.N.Y.1999). Here, the Debtors have an equitable interest in the lease agreement for the lot of land, in the structures built and in the rents payments they received for renting the structures built. In light of the above, the court holds that the Bankruptcy Court did not err as a matter of law when it considered that Appellant was subject to the automatic stay provision.

## C. Genuine Issues of Material Fact

▮ The Bankruptcy Court held that Appellant willfully violated the automatic stay, aided and abetted Mrs. Vidal in actions that constitute a willful violation of the automatic stay, and intentionally interfered with the Debtors' lease, sublease, and rent payments. Appellant argues that this was error because there are genuine issues of material fact that prevent a rational fact finder from finding in Debtors' favor under the standard of clear and convincing evidence. Even though the court has held that the Bankruptcy Court did not abuse its discretion when it deemed the Debtors' motion for partial summary judgment as unopposed (Section IV.A.), this does not mean that summary judgment should automatically follow. *Velez*, 375 F.3d at 42. "Even when faced with an unopposed motion for summary judgment, a court still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted". *Id.* (citing *Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7 (1st Cir.1990); Fed.R.Civ.P. 56(e)). In this regard, appellate review of an order granting summary judgment is confined to the record before the court at the time it made the challenged ruling. *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 204 (1st Cir.2006) (citing *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir.1985) (per curiam)). Thus, the court will not consider the evidence that Appellant is introducing for the first time on appeal.

▮ A willful violation of the automatic stay occurs when there is knowledge of the stay and the defendant intended the actions which constituted the violation. *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir.1999) (citing *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989); *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990); *In re Atlan-*

*tic Business and Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir.1990)). The debtor has the burden of providing the creditor with actual notice. *Id.* Once the creditor received actual notice, the burden shifts to the creditor to prevent violations of the automatic stay. *Id.* (citing *In re Smith*, 180 B.R. 311, 319 (Bankr.N.D.Ga.1995)).

 An examination of the record relied by the Bankruptcy Court reveals the following. On June 6, 2002, Arturo sent a letter to Attorney Soto Ledesma notifying him that Debtor Ruiz "was on bankruptcy court." *See* Appendix, Docket 11 at p. 270. In his deposition, Appellant admitted that Attorney Soto Ledesma is his counsel. *Id.* at 207. This information supports the conclusion that Appellant had knowledge of the Debtors' bankruptcy around June 6, 2002. However, the record also contains a sworn statement by Appellant, signed on July 24, 2003. In this statement, Appellant avers that he has "never been notified of any automatic stay or any bankruptcy proceedings of Mr. Fernando Ruiz." *Id.* at 209. Thus, the Debtors' own evidence suggests that there is a genuine issue of material fact as to whether Appellant knew of the bankruptcy and automatic stay at the time he allegedly collected the rents from Debtors' tenants and at the time he advised his mother about the property. Because it is disputed when Appellant acquired such knowledge, the Bankruptcy Court erred as a matter of law when it held that Appellant willfully violated the automatic stay and that he aided and abetted Mrs. Vidal in actions that constitute a willful violation of the automatic stay.

The second element required for a finding of a willful violation of the automatic stay is that defendant intended the actions which constituted the violation. *Fleet*, 196 F.3d at 269. With respect to this element, the record reveals the following. Appellant spoke to Debtors' tenants and found out that they were paying Debtors more money that Debtors were paying Mrs. Vidal. *See* Appendix, Docket 11 at p. 220. Appellant understood that Mrs. Vidal could be paid more than what Debtors' were paying her and told her about this disparity. *Id.* Some time later, Mrs. Vidal sent a letter to Debtors cancelling their lease. *Id.* at 245. She also sent a letter to the Debtors' tenants instructing them to cease making rent payments to Debtors and to make payments directly to her. *Id.* at 271–72. Appellant received one check from Jose Luis Mercado, one of Debtors' tenants. *Id.* at 34. This check was written to Mrs. Vidal. *Id.* Because Appellant did not commit an overt act which resulted in the Debtors' eviction or interference with their subleases, the court finds that the Bankruptcy Court erred as a matter of law when it held that Appellant intentionally interfered with the Debtors' lease, sublease and rent payments. Accordingly, the court vacates the Bankruptcy Court's opinion and order granting the Debtors' motion for partial summary judgment and orders that the same be denied.

## V. Conclusion

For the foregoing reasons, the judgment of the Bankruptcy Court is hereby **REVERSED.** The case is **REMANDED** for proceedings consistent with this opinion and order.

**SO ORDERED.**