# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 10-6067

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Thomas Michael Horras, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| United States, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff – Appellee, | * | Southern District of Iowa |
| | * | |
| v. | * | |
| | * | |
| Thomas Michael Horras, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: January 5, 2011
Filed: January 26, 2011

_____

Before FEDERMAN, VENTERS, and SALADINO, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

The Debtor-Defendant, Thomas Michael Horras, appeals the bankruptcy court's order granting summary judgment against him as to the dischargeability of certain

debts owed to the United States ("Government").  For the reasons set forth below, we affirm the decision of the bankruptcy court.[1]

## I.  STANDARD OF REVIEW

The bankruptcy court's grant of summary judgment is reviewed *de novo*.[2]

## II.  BACKGROUND

We glean the following facts from the pleadings filed in the bankruptcy court in conjunction with the Government's motion for summary judgment.  No further record is available due to the  Debtor's failure to provide this panel with a transcript of the hearing on the motion.

The litigation between these parties started approximately eight years ago.  In May 2002 the Office of Inspector General of the United States Department of Health and Human Services ("HHS") notified Horras that, as owner and president of Hawkeye Health Services, Inc. ("Hawkeye Health"), he presented or caused to be presented claims for payment to Medicare and Medicaid for medical or other items or services that he knew or should have known were not provided as claimed or were false or fraudulent in violation of the Civil Monetary Penalties Law.[3]  The notification letter explained that HHS was proposing to exclude him from federal health care programs for seven years and to impose a $784,072 assessment and $38,000 in penalties.

---

[1]The Honorable Anita L. Shodeen, Bankruptcy Judge for the Southern District of Iowa.

[2] *Taylor v. St. Louis County Bd. of Election Commissioners*, 625 F.3d F.3d 1025, 1028 (8th Cir. 2010).

[3] 42 U.S.C. § 1320a–7a.

Horras requested a hearing before an administrative law judge of the Civil Remedies Division of the Departmental Appeals Board to contest the proposed sanctions. However, Horras filed a Chapter 7 bankruptcy petition five days before the hearing was to begin on April 28, 2003.

Two days after filing his bankruptcy petition, the Debtor filed an emergency motion to stay the administrative proceeding. The Government resisted the motion, arguing that the Debtor had to exhaust his administrative remedies before the dischargeability of its claim could be reviewed in bankruptcy court and that the administrative proceeding was exempt from the automatic stay under 11 U.S.C. § 362(b)(4) as an exercise of the government's police and regulatory power. The bankruptcy court denied the Debtor's motion on the basis that the stay did not apply to the administrative proceeding, but noted that to the extent it did apply, the stay would be lifted solely to permit findings of fact and conclusions of law to be made. The stay remained in place to bar the enforcement of any monetary penalties or assessments or to impose any sanctions.

The administrative hearing lasted for 11 days. At the hearing, the Government, the Debtor, and his co-defendant presented testimonial and documentary evidence. The administrative law judge ("ALJ") applied the preponderance of the evidence standard,[4] had the authority to exclude unreliable evidence,[5] and was required to exclude irrelevant, immaterial, or privileged evidence.[6]

On April 29, 2005, the ALJ issued his opinion sustaining HHS's decision to impose civil monetary penalties and assessments and to exclude Horras from federal

---

[4] 42 C.F.R. § 1005.l5(d).

[5] 42 C.F.R. § 1005.17.

[6] *Id.*

health care programs for seven years. The ALJ reduced the initial assessment by a portion of a settlement HHS reached with the successor owners of Hawkeye Health, for a final judgment of $673,212. The ALJ concluded that the Government had "proven, by a preponderance of the evidence, all of the elements required for the imposition of . . . an assessment, penalties, and an exclusion at the levels proposed."

While the ALJ had the case under advisement, the Government filed a motion in the bankruptcy court under Fed. R. Bankr. P. 4007(c) to extend the deadline for filing a complaint objecting to the dischargeability of a debt. The bankruptcy court held a hearing on the motion, and on September 30, 2003, the court extended the deadline to April 1, 2004, and noted that "no further continuance will be granted."

On April 1, 2004, the Government filed a second motion to extend the deadline to file a dischargeability complaint. The motion explained that the Debtor had requested the opportunity for post-hearing oral argument in the administrative proceeding and that until the ALJ rendered his decision, the matter was not ripe for consideration in the bankruptcy court. The bankruptcy court granted the Government's motion over the Debtor's objection and ordered the Government to file quarterly status reports concerning the progress of the administrative proceedings. The order did not set a specific deadline for filing a nondischargeability complaint.

The Government filed nine status reports. In its May 2005 status report, the Government explained that the ALJ had issued his decision. The Government also offered to file its complaint within thirty days after any final decision of the ALJ or an appellate body determining a debt was owed to HHS and requested that the Debtor be required to notify the bankruptcy court if he intended to appeal.

Meanwhile, back in the administrative proceedings, the Debtor and the Government cross-appealed the ALJ's decision. The Departmental Appeals Board ("DAB") affirmed the ALJ's decision on February 24, 2006. The DAB noted that the

4

case was "complex and contentious with a voluminous record and lengthy briefing," and specifically commented about the insufficiency of the Debtor's evidence and arguments:

> In six pages of his briefing addressing factual findings against him, Horras does not offer a single citation to any evidence in the record. His broad assertions and unsupported characterizations of the record made without such citations are entitled to little weight in the face of the evidence of record marshaled in the ALJ Decision on each of the contested cost items. . . . Horras provides no argument which could remotely justify overturning the ALJ's determinations.

In its March 30, 2006 status report, the Government informed the bankruptcy court that the DAB had issued its decision and requested that "the Debtor advise this Court whether he intends to continue to pursue any appeal rights." Additionally, the Government explained that if the debtor did not appeal the DAB's decision, it would "shortly be in a position to file a nondischargeability complaint." The Debtor appealed the DAB's decision to the Eighth Circuit Court of Appeals, apparently without notifying the bankruptcy court.

On August 7, 2007, the Court of Appeals affirmed the DAB's decision,[7] stating in relevant part:

> The ALJ found that Horras "knowingly presented or caused to be presented" the false or fraudulent claims; had "direct first-hand knowledge" that they represent unallowable costs; "acted with reckless disregard of this knowledge when he included or caused to be included" them on Hawkeye's cost reports. Any claim of good faith reliance by Horras is not supported by the record. The DAB concluded, "The ALJ's factual findings are supported by substantial evidence on the record as

---

[7] *Horras v. Leavitt*, 495 F.3d 894 (8th Cir. 2007).

a whole." Having reviewed the voluminous record, this court agrees. The factual findings are supported by substantial evidence on the record as a whole; further discussion would have no precedential value.

Neither the Debtor nor the Government advised the bankruptcy court of the Eighth Circuit's decision, so no action took place in the bankruptcy court until the court held a status hearing on September 9, 2008, at which time it set an October 31, 2008, deadline for the filing of the Government's complaint. The Government filed its complaint on October 29, 2008.

The complaint alleged that the $673,212 assessment owed by the Debtor to HHS is nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt incurred through false pretenses, false representations, and actual fraud committed against the Medicare and Medicaid programs. The complaint also alleged that the $38,000 penalty is nondischargeable under 11 U.S.C. § 523 (a)(7) as a debt for a fine or penalty payable to and for the benefit of a governmental unit, and not as compensation for actual pecuniary loss. Finally, the Government argued that collateral estoppel should apply to the prior decisions from the ALJ, DAB and Eighth Circuit, all of which had ruled in its favor. In lieu of an answer, the Debtor filed a motion to dismiss the complaint, arguing that it was untimely because it was not filed shortly after the Eighth Circuit affirmed the DAB's decision.

On January 30, 2009, the bankruptcy court denied the Debtor's motion to dismiss, holding that Fed. R. Bankr. P. 4007(c) did not require the court to set a fixed date for the deadline to file a nondischargeability complaint, and, therefore, the court had the discretion to extend the deadline until such time as there was a final determination that a debt is owed by the Debtor to HHS. The bankruptcy court found that the deadline was October 31, 2008, pursuant to its September 9, 2008 order; therefore, it held, the Government's complaint filed on October 28, 2008 was timely.

6

Having disposed of the Debtor's motion to dismiss, the bankruptcy court entered a scheduling order on March 9, 2009, directing that dispositive motions be filed "within 30 days prior to the date first set for trial."

Trial was initially scheduled for July 20, 2010, but on July 1, 2010, the Government requested a continuance, stating that it had prepared a motion for summary judgment. The motion represented that the Debtor's attorney had no objection to a continuance of the trial. The bankruptcy court granted the motion, stating in pertinent part: "Having reviewed the motion and having determined that good cause has been established. . . . The Court hereby grants the motion. A status conference will be conducted by the Court related to setting a new trial date in the event no dispositive motions are filed on or before August 31, 2010." The Debtor neither objected to the text order nor asked to have it vacated. The Government filed its motion for summary judgment on July 12, 2010.

The bankruptcy court held a telephonic hearing on the Government's motion for summary judgment on August 30, 2010, and entered a minute order granting the motion the following day. Accordingly, judgment was entered against the Debtor for $38,000 under 11 U.S.C. § 523(a)(7) and for $673,212 under 11 U.S.C. § 523(a)(2)(A). The record of the August 30 hearing was the only basis stated for the ruling and judgment.

The Debtor filed a timely notice of appeal on September 13, 2010.

## III. DISCUSSION

As a preliminary matter, we note that Horras's failure to submit the transcript on appeal is sufficient basis alone to affirm the decision of bankruptcy court.[8] We

---

[8] *See In re Maixner*, 288 B.R. 815, 817, 818 (B.A.P. 8th Cir. 2003) ("[The Appellant] failed to provide this appellate panel with a transcript of the

7

nevertheless address the substance of Horras's arguments and find that they are all without merit.

**A.    The Government's complaint and motion for summary judgment were timely filed.**

Horras first argues that the bankruptcy court should be reversed because the Government's complaint and motion for summary judgment were untimely filed. The bankruptcy court rejected these arguments – and we affirm – based on the propriety and plain language of the bankruptcy court's orders establishing deadlines for each of these filings.

The Government claims arise under 11 U.S.C. §§ 523(a)(2)(A) and (a)(7). The Debtor's challenge to the timeliness of the Government's § 523(a)(7) claim is easily disposed of because there is no deadline for § 523(a)(7) actions.[9] With regard to the Government's § 523(a)(2) claim, the docket in the underlying bankruptcy case shows that the Government's complaint was timely filed by the deadline set forth in Fed. R. Bank. 4007(b), as extended by orders of the bankruptcy court.

---

proceedings below. . . . For this reason alone, we would affirm.") (citing *McCormick v. Diversified Collection Servs., Inc.* (*In re McCormick*), 259 B.R. 907, 909 (B.A.P. 8th Cir. 2001); *Lopez v. Long* (*In re Long*), 255 B.R. 241, 245 (B.A.P. 8th Cir. 2000)). *See also Malone v. Payeur* (*In re Payeur*), 22 B.R. 516, 519 (B.A.P. 1st Cir. 1982) ("As it is Appellant's duty to arrange for this panel to have an adequate record on which to consider its argument, we conclude that Appellant has not met its burden of proving that the bankruptcy judge's finding. . . was clearly erroneous.").

[9] *In re Thompson*, 418 F.3d 362,364, n. 2 (3d Cir. 2005) (noting that § 523(a)(7) claims can be filed "at any time"); *Matter of Towers*, 162 F.3d 952, 953 (7th Cir. 1998).

Under Fed. R. Bankr. P. 4007(b), the deadline for filing an action under § 523(a)(2) is 60 days after the first date set for the meeting of creditors. That deadline may be extended "for cause" as long as the motion to extend the deadline is filed before the deadline has expired.[10]

The Government filed its first motion to extend the deadline to file a determination of dischargeability under § 523(a)(2) on July 24, 2003, three days before the initial deadline expired on July 27, 2003. The bankruptcy court granted that motion and set a new deadline of April 1, 2004.[11] The Government filed its second motion to extend on the last day of that deadline.

On May 4, 2004, the bankruptcy court granted the Government's second motion to extend the deadline and directed the Government to file quarterly progress reports. Although the Government's motion requested that the deadline be suspended "until such time as there is a final determination that a debt is owed by the Debtor to HHS," nothing in the order indicated that a dischargeability complaint or a motion to extend the filing deadline had to be filed within a certain time after a final determination in the administrative proceedings. The Government filed its last of nine progress reports on May 22, 2006. After that, the issue lay essentially dormant until the bankruptcy court, *sua sponte*, scheduled a status hearing for September 9, 2008.

Upon learning that the Eighth Circuit Court of Appeals had issued its ruling affirming the DAB's (and ALJ's) decision, the bankruptcy court set a deadline of October 31, 2008, for filing a dischargeability complaint. The Government timely filed its complaint on October 28, three days before the deadline.

---

[10] Fed. R. Bank. P. 4007(c).

[11] In the text order granting the motion, the bankruptcy court noted that no further extensions would be granted, but nothing in Rule 4007(b) or federal jurisprudence would (or did) prevent the court from departing from that edict.

9

The crux of the Debtor's argument is that the bankruptcy court erred by not finding that the deadline for filing a dischargeability complaint expired when the Government failed to promptly notify the court of the Eighth Circuit's decision.

> Debtor submits that under the terms of the Bankruptcy Court's 4 May 2004 [sic] Order extending the deadline to coincide with the conclusion of the underlying nonbankruptcy litigation it was incumbent upon Plaintiff to file a motion under Rule 4007(c) seeking a further extension of the Rule 4007(c) deadline after receipt of the August 7, 2007 ruling. Failure to do so caused the deadline to file a dischargeability complaint to expire. Upon expiration of that deadline, the court lacked authority or discretion to revive the deadline or to otherwise extend it as it did in this case more than a year later.

We find no support for this contention in the bankruptcy court's order or in Rule 4007. As noted, the May 4, 2004 order directed the Government to file quarterly status reports during the pendency of the underlying non-bankruptcy case. It did not mention, let alone provide for, a truncated deadline for filing a dischargeability complaint in the event the Government failed to file a dischargeability complaint or a status report after a final determination in the administrative proceedings. And there is no basis in Rule 4007 to imply or to graft such a provision onto the order. The May 4, 2004 order extended the deadline for filing a dischargeability complaint indefinitely. When the bankruptcy court ultimately set a definitive deadline – October 31, 2008 – the Government timely filed its complaint.

Therefore, we affirm the bankruptcy court's determination that the Government's complaint seeking a determination of dischargeability under 11 U.S.C. § 523(a)(2)(A) was timely filed.

The Debtor's argument that the Government's motion for summary judgment was untimely also fails based on the unambiguous orders of the bankruptcy court.

10

The bankruptcy court's March 9, 2009 scheduling order tied the deadline for filing dispositive motions to 30 days before the first date set for trial.[12] The trial was set for July 20, 2010. On July 1 the Government filed a motion to continue the trial, stating that it needed additional time to prepare for trial due to the ill health of the lead attorney, that it planned to file a motion for summary judgment, and that counsel for the Debtor had no objection to a continuance of the trial. The bankruptcy court granted the Government's motion and reset the dispositive motion deadline to August 31, 2010. The Government filed its motion for summary judgment on July 12, 2010, well before that deadline.

The Debtor argues that the bankruptcy court shouldn't have extended the dispositive motion deadline because he consented only to a continuance of the trial – not to the motion deadline – and because he was prejudiced by the extension.

Neither of these arguments is supported by the record. If the Debtor had an objection to an extension of the dispositive motion deadline, it was incumbent on him to raise that objection at the time the bankruptcy entered its order extending the deadline. But he sought neither vacation nor reconsideration of that order. Consequently, he is bound by it and barred from raising an objection to it here.

---

[12] We recognize that the language "first date set for trial" could be interpreted as creating a fixed deadline, since the first date "set" doesn't change even if actual trial date does. But the bankruptcy court was still well within its discretion to extend that deadline by subsequent order. *See Penn v. Iowa State Bd. of Regents,* 999 F.2d 305, 307 (8th Cir. 1993) ("District courts have the duty and power to manage their dockets and we will not intervene in the absence of an abuse of discretion.").

Moreover, the bankruptcy court was well within its discretion to accept a late filed motion under the circumstances.[13] The parties' "Joint Pretrial Statement" filed in the adversary proceeding indicated that the Government's case would be based on the record in the non-bankruptcy case, and perhaps one witness. The Debtor planned to call only himself as a witness, just as he had done before the ALJ. Therefore, we find that the Government's motion for summary judgment was timely filed and properly considered by the bankruptcy court.

## B.     The record supports summary judgment in favor of the Government.

The Debtor makes four arguments directed at the substance of the bankruptcy court's order. First, he argues that "there was a genuine issue of material fact as to whether Mr. Horras received any money, property, services, or an extension, renewal or refinancing of credit which was obtained by false pretenses, a false representation, or actual fraud." In other words, he maintains that there was a material issue of fact precluding summary judgment on the Government's § 523(a)(2)(A) claim.

To create a genuine issue of material fact – at trial or on appeal – a nonmoving party (or appellant) must set forth specific facts and present affirmative evidence showing there is a genuine issue of material fact precluding summary judgment.[14] Here, the Debtor has not presented a single, specific fact (let alone supporting evidence) that would preclude summary judgment under § 523(a)(2)(A). And we have no inclination or obligation to scour the record for facts which might support the

---

[13] *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 58 (lst Cir. 2000) (holding that district court did not abuse its discretion in entertaining motion for summary judgment filed 61 days after court imposed deadline because the motion presented a relatively straightforward issue). *Pico Vidal v. Ruiz Alvarado*, 377 B.R. 788 (Bankr. D. P.R. 2007) (considering a motion for summary judgment filed 58 days late).

[14] *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Debtor's challenge to the bankruptcy court's order.[15]  Therefore, we reject the Debtor's challenge to the bankruptcy court's summary judgment order on this issue.

The Debtor's second argument, directed at the Government's § 523(a)(7) claim, fails for the same lack of specificity and support.  He argues that there was a genuine issue of material fact as to whether the claim of the HHS against him is for "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty."  But he fails to identify a single countervailing fact or piece of evidence that would establish a material issue of fact precluding summary judgment on this issue.  We therefore affirm the bankruptcy court's decision on this point as well.

Third, the Debtor argues that the bankruptcy court erred in giving collateral estoppel effect to the rulings of the ALJ and DAB because "the evidentiary rules in the underlying non-bankruptcy case did not comply with the Federal Rules of Evidence and therefore the administrative proceeding did not meet the evidentiary requirements of *Grogan v. Garner*."[16]  This argument misinterprets *Garner*[17] and ignores the fact that federal courts routinely give preclusive effect to decisions rendered by forums not governed by the Federal Rules of Evidence.

---

[15] *See White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.") (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

[16] Appellant Br. 16.

[17] 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Garner* is inapposite for the simple reason that it does not address the issue of whether a federal court is precluded from giving res judicata or collateral estoppel effect to a judgment from a court not governed by the Federal Rules of Evidence. The *Garner* Court had no occasion to reach this issue because both the underlying district court proceeding and the bankruptcy court matter were, in fact, governed by the Federal Rules of Evidence. *Garner* stands primarily for the proposition that the preponderance of evidence standard applies in dischargeability proceedings.[18] And the underlying administrative law proceedings in the present case applied a preponderance of evidence standard. Thus, the Debtor's reliance on *Grogan v. Garner* is wholly misplaced.

The Debtor offers no support for his contention that a federal court should not give preclusive effect to an administrative decision simply because it was not governed by the Federal Rules of Evidence. And to our knowledge, no such authority exists. To the contrary, the Supreme Court has long favored application of the common-law doctrines of collateral estoppel and res judicata to determinations of administrative bodies that have attained finality.[19]

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. The

---

[18] *Id.*

[19] *See Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991).

14

principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal . . . which acts in a judicial capacity.[20]

Here, the administrative decision at issue has not only been reviewed and affirmed by an administrative appellate body, but the Eighth Circuit Court of Appeals has put its imprimatur on it, as well. In light of this authority and in the absence of a specific allegation that the Debtor was prejudiced by a specific evidentiary ruling, we find no merit in Debtor's challenge to the preclusive effect given by the bankruptcy court to the decisions of the ALJ, DAB, and Eighth Circuit Court of Appeals.

Finally, the Debtor argues that the bankruptcy court should not have given preclusive effect to the ALJ's or Eighth Circuit Court of Appeals's decisions because the issues litigated in those proceedings were not identical to those before the bankruptcy court.

While we agree that the application of collateral estoppel to a prior decision requires an identity of issues,[21] in the absence of a specific allegation of a material discrepancy between the issues litigated in the non-bankruptcy and bankruptcy court proceedings,[22] we decline to scour the record to determine whether such a discrepancy exists – especially when our review of the record has been hampered by the Debtor's

---

[20] *Id*. at 107-108 (citations and quotations omitted).

[21] *See Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Engineers*, 440 F.3d 1038, 1044 (8th Cir. 2006) (collateral estoppel applies only when issue to be precluded is identical to the issue previously decided).

[22] The Debtor's response filed in opposition to the Government's motion for summary judgment also fails to identify a material difference in the issues decided in the non-bankruptcy and bankruptcy proceedings.

failure to provide a transcript of the hearing on which the bankruptcy court's entry of summary judgment was based.[23]

## CONCLUSION

For the reasons stated above, we affirm the bankruptcy court's order granting the United States's motion for summary judgment.

———————————

[23] *See supra* n. 14.